UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY N. PERRY,

     Plaintiff,

vs

HENRY FORD COLLEGE,

     Defendant.

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, TRACY N. PERRY, by and through her attorneys, TERESA J. GORMAN, PLLC and CROSON, TAUB & MICHAELS, PLLC, for her Complaint, states:

### JURISDICTION AND PARTIES

1.    This suit is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e et seq. and the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq.

2.    This court has jurisdiction pursuant to 28 USC §1331 and 28 U.S.C. §1367(a).

3.    Plaintiff is a citizen of the United States and a resident of the City of Taylor, Wayne County, Michigan.

4.     Defendant is a community college located in the City of Dearborn, Wayne County, Michigan.

5.     Plaintiff was Defendant's employee within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e et seq. and the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq.

6.     Defendant meets all of the requirements for employer status under Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e et seq. and the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq.

7.     The events giving rise to this cause of action occurred in Dearborn, Michigan, in the Eastern District of Michigan. Accordingly, venue lies in the United States District Court for the Eastern District of Michigan under 28 USC §1391(b).

8.     The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

## GENERAL ALLEGATIONS

9.     Plaintiff incorporates by reference the previous paragraph.

10.     Plaintiff is a 51-year-old African American woman.

11.     In January 2023, Plaintiff commenced employment with Defendant as its Director of Admissions and Recruiting.

12.     Plaintiff consistently performed her job duties with Defendant in a satisfactory or above manner.

2

13.     Plaintiff's supervisor was Defendant's Vice President, Rhonda DeLong ("DeLong").

14.     DeLong is Caucasian.

15.     DeLong was not part of the interviewing or hiring process that resulted in Plaintiff's hiring and made it known to Plaintiff that she had wanted to hire Kristine Rouleau ("Rouleau"), a Caucasian recruiter.

16.     In her role as Director of Admissions and Recruiting, one of Plaintiff's job duties was to recruit potential recruiters and other staff members which would be her direct reports but DeLong had final say on the hiring of all recruiters and staff members

17.     Plaintiff quickly learned that DeLong had discriminatory animus for non-Caucasian applicants.

18.     In the spring of 2023, Plaintiff had two finalists for a recruiter position, an African American woman and a woman of Arab ethnic background.

19.     DeLong rejected both applicants, stating that the Arab woman had "too strong of a personality and we already have too many strong personalities on the team."

20.     In mid-2023, DeLong pressured Plaintiff not to interview or hire a African American woman based on Caucasian subordinate Krista Rouleau's recommendation.

3

21.     In July 2023, DeLong instructed Plaintiff to cancel an interview with an African American woman citing "toxicity" based on unverified feedback again from Rouleau.

22.     In July 2023, Plaintiff spoke to Defendant's human resources department about DeLong and Rouleau's discriminatory bias.

23.     Plaintiff interviewed the African American woman despite DeLong's objections and was retaliated against for doing so.

24.     At an August 2023 staff meeting, Rouleau states that Plaintiff (her immediate supervisor) never should have interviewed the African American woman and refers to her as a "bitch."

25.     In September 2023, DeLong admonished Plaintiff with fabricated allegations, told Plaintiff she "seems stressed" and is being watched, and suggested that she should take a mental health leave of absence.   Plaintiff declined.

26.     In August/September 2023, Plaintiff decided to hire an African American woman with two master's degrees.   DeLong rejected her hiring, stating that she was "unqualified" and asking "why do these unqualified people keep applying and being selected?"

27.     In the fall of 2023, Rouleau went over Plaintiff's head to request access to advisory screens in the system that had been denied to her.   Several directors for

enrollment management team agreed that Rouleau should not have such access. DeLong overruled Plaintiff and the other directors.

28.    In the fall of 2023, Rouleau again went over Plaintiff's head and complained to DeLong that she was not privy to candidates' redacted resumes before they are selected despite the fact that hiring new employees was not within her job duties.   DeLong contacted human resources to ensure that the hiring process would **not** include Rouleau, bypassing Plaintiff's authority.

29.    In November 2023, DeLong again discouraged Plaintiff from interviewing a qualified African American woman.

30.    In December 2023, DeLong reprimanded Plaintiff for fabricated performance problems.

31.    In the fall of 2023, during a staff meeting, an African American recruiter mentioned that she has a way of connecting with students during lunch visits.   When Plaintiff told DeLong that this could be especially beneficial with African American students in Detroit Public Schools, DeLong again consulted with Plaintiff's subordinate Rouleau who disagreed because DeLong and Rouleau "do not like [the African American recruiter's] attitude" or her "as a person."

32.    In January 2024, Plaintiff commenced mental health counseling due to the discriminatory work environment.

33.    In February 2024, a recruiter of Indian descent complained to Plaintiff about Rouleau's discriminatory language and treatment.   Plaintiff directed the employee to complain directly to DeLong and also reported the complaint to DeLong herself.   DeLong defended Rouleau.

34.    In the winter of 2024, an African American female recruiter was blamed for mistakes made by Rouleau.   When she complained, DeLong informed Plaintiff that she did not like having Rouleau "thrown under the bus."

35.    In January/February 2024, Plaintiff met with Defendant's human resources rep, Lisa, and complained about DeLong's discriminatory treatment of her as well as other minority employees.   No remedial action was taken by Defendant.

36.    In March 2024, DeLong purposefully delayed acknowledging an African American female recruiter's good work.

37.    In March 2024, DeLong informed Plaintiff that she should undergo Executive Coaching.   Plaintiff informed DeLong that she still has not received the performance evaluation that was to be conducted in July 2023.

38.    In March 2024, Plaintiff complained again to Defendant's human resources representative, Tracye Davis, that she still had not received her performance evaluation from DeLong and that the suggested Executive Coaching by DeLong was a ruse to terminate her employment.

39.     Subsequently, the Executive Coaching began and Plaintiff expressed concerns to the coach that DeLong was setting her up for termination.

40.     In April 2024, after 15 months of employment, Plaintiff was finally provided with her first performance review, in violation of the employment contract's six month review clause.

41.     In April/May 2024, Plaintiff and the Executive Coaching coach met with Lisa of Defendant's human resources department regarding DeLong's lack of support of Plaintiff.   Lisa encouraged Plaintiff to "handle it on [her] own."

42.     In the spring of 2024, DeLong arranged for Plaintiff to meet with a consultant allegedly hired to evaluate support needs.   This Caucasian female consultant eventually replaced Plaintiff after Plaintiff's termination.

43.     In May 2024, the team was planning a going-away party for Rouleau. DeLong invited a Caucasian female admissions staff member but did not include two African American female recruiters.

44.     In June/July 2024, the two African American female recruiters filed a complaint against DeLong with Defendant's human resources department after DeLong made discriminatory remarks about both women,

45.     In the summer of 2024, during the office relocation, DeLong assigned seating to all staff members without Plaintiff's input.   DeLong assigned a Caucasian

female admissions staff member to the closest location to Plaintiff's desk with the instruction that she report Plaintiff's movements to DeLong.

46.     On July 22, 2024, Plaintiff met again with Defendant's human resources representative and submitted documentation regarding DeLong's racial discrimination.

47.     Shortly thereafter, DeLong retaliated by questioning Plaintiff's competence relative to a grant proposal.   In response, Plaintiff complained to DeLong about the hostile work environment created by DeLong.   DeLong then further admonished Plaintiff by stating that she would never say that to someone's face and that Plaintiff was using some powerful words and accusations.

48.     Shortly thereafter, Plaintiff complained about DeLong's admonishment to Tracye Davis of Defendant's human resources department.   Ms. Davis told Plaintiff that DeLong "had every right" to admonish Plaintiff.

49.     In August 2024, DeLong restricted an African American female recruiter's involvement in the Discover Day video despite the recruiter's expertise.

50.     In September 2024, DeLong denied Plaintiff's request to attend a professional development conference scheduled for November 2024.

51.     On October 3, 2024, Plaintiff was required to meet with DeLong and Defendant's human resources representative regarding a Performance Improvement Plan ("PIP") mandated by DeLong which was to expire on November 22, 2024.

Plaintiff refused to sign the PIP and complained that there had not been requisite formal complaints against her, she felt targeted, and had only recently received feedback on her performance.  Plaintiff's requests that this meeting be recorded were denied.

52.    On October 3, 2024, Plaintiff complained to her union regarding the unfair PIP.

53.    On October 3, 2024, Plaintiff filed a formal complaint with Lisa Bradley of Defendant's human resources department regarding the discriminatory treatment to which DeLong subjected her and other minorities.

54.    On October 31, 2024, Plaintiff met with union representative Joe Zitnik and Lisa Bradley of Defendant's human resources department regarding the discriminatory treatment to which DeLong subjected her and other minorities.

55.    In October 2024, Plaintiff informed Lisa Bradley of Defendant's human resources department that she had not met with DeLong in violation of the terms of the PIP.  Lisa informed Plaintiff that she was unavailable to attend but would direct a human resources staff member to attend.

56.    On November 12, 2024, Defendant terminated Plaintiff's employment despite Plaintiff having completed the items on the PIP up to that point and the end date of the PIP being November 22, 2024.

57.     In November/December 2024, DeLong appointed a Caucasian female as interim director replacing Plaintiff.

58.     In December 2024, Defendant retaliated against Plaintiff by attempting to deny Plaintiff's claim for unemployment benefits by falsely telling UIA that Plaintiff had resigned.

59.     In January 2025, the first of the two African American female recruiters who had also filed internal complaints about DeLong resigned from Defendant's employ.

60.     In February 2024, the second of the two African American female recruiters who had also filed internal complaints about DeLong resigned from Defendant's employ.

61.     In the winter of 2024, DeLong removed any mention of Plaintiff from Defendant's website, including press releases regarding Plaintiff's hiring and quotes from other press releases.   She also removed press releases regarding the two African American female recruiters.

62.     Throughout the course of Plaintiff's employment, Plaintiff was subjected to race discrimination which included, but was not limited to:

a.      racially derogatory and discriminatory comments and conduct;

b.      stereotyping;

c.     denial of job opportunities that were provided to her non-African American peers;

d.     creation of a racially hostile work environment; and

e.     discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of her race.

63.     Defendant, by and through its agents, representatives, and employees, treated Plaintiff differently from similarly situated non-African American employees in the terms and conditions of employment, based on unlawful considerations of race.

64.     The harassing and discriminatory conduct based on Plaintiff's race had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

65.     Plaintiff repeatedly complained to Defendant about the harassing and discriminatory conduct to which she and others were being subjected on the basis of race.

66.     Defendant had both actual and constructive notice that its agents and employees created a hostile and offensive work environment for Plaintiff.

67.     Despite having notice of the harassing and discriminatory conduct based on Plaintiff's race Defendant failed to remediate.

68.     As a direct result of reporting that he and others were being subjected to violations of discrimination laws, Plaintiff was subjected to unlawful retaliation, including, but not limited to, retaliatory harassment, unwarranted criticism of her work performance, and termination from employment.

**COUNT I**
**RACIAL HOSTILE WORK ENVIRONMENT HARASSMENT**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

69.     Plaintiff incorporates by reference all previous paragraphs.

70.     During the course of her employment with Defendant, Plaintiff was subjected to racially harassing commentary and conduct by Defendant.

71.     The racially harassing commentary and conduct had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

72.     Defendant had both actual and constructive notice that its agents and employees created a hostile and offensive work environment for Plaintiff.

73.     Despite having notice of the racially harassing commentary and conduct to which Plaintiff was subjected, Defendant failed to remediate.

74.     Defendant's conduct violated Title VII of the Civil Rights Act of 1964, as amended.

75.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe

benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT II
## RACE DISCRIMINATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

76.    Plaintiff incorporates by reference all previous paragraphs.

77.    During Plaintiff's employment with Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff and other minority employees in the terms and conditions of employment based on unlawful consideration of race.

78.    During Plaintiff's employment with Defendant, Defendant, through its employees, agents, and representatives, treated Plaintiff and other minority employees differently from similarly situated non-African American employees in the terms and conditions of employment.

79.    Plaintiff was subjected to race discrimination by Defendant, by and through its employees, agents, and representatives, said acts being made unlawful by Title VII of the Civil Rights Act of 1964, as amended.

80.    Defendant, by and through its employees, agents, and representatives, violated Title VII of the Civil Rights Act of 1964, as amended, by the following acts:

a.    subjecting Plaintiff to racially derogatory and discriminatory comments and conduct;

b. denying Plaintiff job opportunities that were provided to her non-African American peers;

c. creating a racially hostile work environment;

d. limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of her race;

e. discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of her race.

81. Defendant, by and through its employees, agents, and representatives, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

82. Defendant, by and through its employees, agents, and representatives, treated Plaintiff and other and minority employees differently from similarly situated non-minority employees in the terms and conditions of employment, based on unlawful consideration of race.

83. Defendant's actions were intentional and with reckless indifference to Plaintiff's rights and sensibilities.

84. If Plaintiff had been Caucasian, she would not have been treated in the manner recounted above.

85.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

## COUNT III
## RETALIATION / RETALIATORY HARASSMENT
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

86.     Plaintiff incorporates by reference all previous paragraphs.

87.     During Plaintiff's employment, Plaintiff complained Defendant about the race discrimination and hostile work environment to which she and other minority employees were subjected.

88.     Plaintiff was subjected to retaliation by Defendant in whole or in part because she complained of unlawful acts of discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, as amended

89.     This retaliation occurred, in part, because Plaintiff engaged in protected activity pursuant to Title VII of the Civil Rights Act of 1964, as amended.

90.     Defendant's acts violated Title VII of the Civil Rights Act of 1964, as amended.

91.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe

benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

## COUNT IV
## RACIAL HOSTILE WORK ENVIRONMENT HARASSMENT
## IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

92.     Plaintiff incorporates by reference all previous paragraphs.

93.     During the course of her employment with Defendant, Plaintiff was subjected to racially harassing commentary and conduct by Defendant.

94.     The racially harassing commentary and conduct had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

95.     Defendant had both actual and constructive notice that its agents and employees created a hostile and offensive work environment for Plaintiff and other minority employees.

96.     Despite having notice of the racially harassing commentary and conduct to which Plaintiff was subjected, Defendant failed to remediate.

97.     Defendant's conduct violated the Elliott-Larsen Civil Rights Act.

98.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT V
## RACE DISCRIMINATION
## IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

99.     Plaintiff incorporates by reference all previous paragraphs.

100.   During Plaintiff's employment with Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff and other minority employees in the terms and conditions of employment based on unlawful consideration of race.

101.   During Plaintiff's employment with Defendant, Defendant, through its employees, agents, and representatives, treated Plaintiff and other minority employees differently from similarly situated non-minoirty employees in the terms and conditions of employment.

102.   Plaintiff was subjected to race discrimination by Defendant, by and through its employees, agents, and representatives, said acts being made unlawful by the Elliott-Larsen Civil Rights Act.

103.   Defendant, by and through its employees, agents, and representatives, violated the Elliott-Larsen Civil Rights Act by the following acts:

a.     subjecting Plaintiff to racially derogatory and discriminatory comments and conduct;

b.     denying Plaintiff job opportunities that were provided to her non-African American peers;

17

c.    creating a racially hostile work environment;

d.    limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of her race;

e.    discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of her race.

104.  Defendant, by and through its employees, agents, and representatives, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

105.  Defendant, by and through its employees, agents, and representatives, treated Plaintiff and other minority employees differently from similarly situated Caucasian employees in the terms and conditions of employment, based on unlawful consideration of race.

106.  Defendant's actions were intentional and with reckless indifference to Plaintiff's rights and sensibilities.

107.  If Plaintiff had been Caucasian, she would not have been treated in the manner recounted above.

108.  As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe

benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

<div align="center">

**COUNT VI**
**RETALIATION / RETALIATORY HARASSMENT**
**IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**

</div>

109.   Plaintiff incorporates by reference all previous paragraphs.

110.   During Plaintiff's employment, Plaintiff complained to Defendant about the race discrimination and hostile work environment to which she and other minority employees were subjected.

111.   Plaintiff was subjected to retaliation by Defendant in whole or in part because she complained of unlawful acts of discrimination and harassment in violation of the Elliott-Larsen Civil Rights Act.

112.   This retaliation occurred, in part, because Plaintiff engaged in protected activity pursuant to the Elliott-Larsen Civil Rights Act.

113.   Defendant's acts violated the Elliott-Larsen Civil Rights Act.

114.   As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following remedies:

A.      Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e et seq., and the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq.

B.      Award Plaintiff all lost wages and the value of fringe benefits, past and future, to which she is entitled;

C.      Award Plaintiff compensatory damages;

D.      Award Plaintiff punitive damages;

E.      Award Plaintiff reasonable attorney's fees, costs, and interest; and

F.      Award Plaintiff such other relief as this Court deems just and proper.

*s/*Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
P.O. Box 792
Troy, MI 48099
(248) 763-6943
terigorman@aol.com

Charlotte Croson (P56589)
Croson, Taub & Michaels PLLC
Attorneys for Plaintiff
455 E. Eisenhower Parkway, Suite 75
Ann Arbor, MI   48108
(734) 519-0973
ccroson@ctmlawyers.com

## **JURY DEMAND**

Plaintiff demands a jury trial.

<div style="margin-left: 40%;">

*s/*Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
P.O. Box 792
Troy, MI 48099
(248) 763-6943
terigorman@aol.com

</div>